UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BRANDON STERLING,

                                        Plaintiff,

        - against -

DEPUTY SUPERINTENDENT A. AKINYOMBO,
MEDICAL DIRECTOR JANICE WOLF
FRIEDMAN, MEDICAL DOCTOR JOSEPH
AVANZATO, and NURSE PRACTITIONER
MARIAMNA BABY,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-10804 (CS)

<u>Appearances</u>:

Brandon Sterling
Monticello, New York
*Pro Se Plaintiff*

Kathryn Martin
Assistant Attorney General
Office of the Attorney General of the State of New York
White Plains, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the motion to dismiss of Defendants Deputy Superintendent A.

Akinyombo, Dr. Janice Wolf-Friedman and Nurse Practitioner Mariamna Baby.[1]  (ECF No. 29.)

For the following reasons, the motion is GRANTED.

## I.      **BACKGROUND**

-----

        [1] In his Second Amended Complaint, (ECF No. 28 ("SAC"), Plaintiff spells Defendant Baby's first name inconsistently, sometimes as "Mariamna" and sometimes as "Mariamma." (SAC at 1, 3, 24.)  The Court adopts the spelling "Mariamna," as that is the spelling used by Defendant Baby's counsel.  (ECF No. 18.)

I accept as true the facts, but not the conclusions, set forth in Plaintiff's SAC, Amended

Complaint, (ECF No. 12 ("AC")), Initial Complaint, (ECF No. 2 ("IC")), and opposition

submission, (ECF No. 31 ("P's Opp.")).  *See Washington v. Westchester Cnty. Dep't of Corr.*,

No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se*

plaintiff the benefit of considering facts in original complaint even if they have not been repeated

in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1

(S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law,

where they are consistent with those in the complaint, may also be considered on a motion to

dismiss.").[2]

A.    **Factual Background**

Plaintiff Brandon Sterling is incarcerated in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").  (SAC at 2.)[3]  During the

events relevant to this lawsuit, Plaintiff was held at the Fishkill Correctional Facility ("Fishkill")

in Fishkill, New York.  (*Id.* at 7.)  On June 27, 2019,[4] at approximately 1:00 P.M., Plaintiff was

assaulted by another inmate from behind, with a "can-top fashioned into a weapon," while he

was in the shower.  (IC at 4; AC at 10.)  This assault resulted in multiple lacerations to Plaintiff's

hands, fingers, and face, and an injured tendon in his right hand, which required immediate

medical attention.  (SAC at 9, 23, 29-30, 41.)  He alleges that the assault occurred "despite the

---

[2] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[3] The page references to the SAC and AC are to the numbers assigned by the Court's Electronic Case Filing (ECF) system.

[4] Plaintiff's IC and AC allege that the assault occurred on June 27, 2019, (IC at 4; AC at 10), but in his SAC he states that it happened on June 26, 2019, (SAC at 9).  Medical records attached to the AC and SAC confirm that the injuries were sustained on June 27, 2019.  (AC at 21; SAC at 30.)

dangers and threats being known to" Akinyombo and two non-defendant correction officers. (AC at 29; *see* IC at 4.)

Plaintiff was transported to Putnam Hospital Center on June 27, where he received treatment.  (SAC at 9.)  His discharge papers reflect that he was instructed to, within one to two days, call for a follow-up appointment with Dr. Mrudangi Thakur.  (*Id.* at 27.)  The document further stated, "[I]t is IMPERATIVE that you follow up with the hand specialist as you have tendon involvement of the fingers which will need to be repaired."  (*Id.*; *see id.* at 9.)  The discharge paperwork also said that "[s]tiches or staples placed in the skin will be removed in 7 to 10 days," and "[b]est results occur when the tendon is repaired in 7 to 10 days."  (*Id.* at 37.) Fishkill medical records reflect that after returning from the Putnam Hospital Center, Plaintiff was admitted to the infirmary for observation, where his vitals were to be checked "every shift." (*Id.* at 39.)  But Plaintiff alleges that "[a]ll Defendants" failed to "provide necessary and indicated medications and antibiotics to plaintiff," "failed to monitor and evaluate for any change in condition," and "prevent[ed] plaintiff from seeing a hand specialist, despite receiving multiple instructions from an external hospital that it is imperative that the plaintiff follow up with [the] hand specialist within 1 to 2 days."  (*Id.* at 9.)

On June 28, Plaintiff signed a sick call slip to notify Wolf-Friedman, Avanzato,[5] and Baby about the follow-up appointment.  (*Id.* at 10.)  His medical records for that date reflect that an unspecified provider observed "[5] sutures to left palm of hand and glue . . . to laceration to index finger," and "[r]ight hand [w/] ace wrap in place."  (*Id.* at 29.)  The note further states that

---

[5] Defendant Avanzato apparently has not been served and is not a moving Defendant. *See* Section III.C below.

Plaintiff "state[d] he is not in pain but states he is upset." (*Id.*)[6]  Another note from the same day by another provider states, "Needs f/u [w/] ORD," and "my computer is down can't make the referral please make the referral when you see this patient next week." (*Id.* at 39.)

On July 7, Plaintiff filed a grievance in which he provided details of his assault, and raised complaints against various non-defendant individuals who allegedly delayed getting Plaintiff to the hospital. (*Id.* at 20.)  He also stated, "[It's] now 12 days and I still have stitches in my hand[;] medical staff has not checked the status of my hands and are failing to even notice my injuries." (*Id.*)  Plaintiff allegedly did not receive a response to this grievance. (*Id.* at 10.)

On July 8, Plaintiff signed up for sick call, complaining that the sutures on his left hand were coming loose and that Fishkill did not follow orders from Putnam Hospital Center to remove his sutures after seven days. (*Id.* at 11, 29.)  An unspecified provider met with Plaintiff that day, observed that Plaintiff was in "[n]o acute distress," and noted that non-defendant Nurse Thomas was "made aware of necessity for suture removal" and "of IM's plan of care as outlined by PHC ER's discharge paperwork." (*Id.* at 29.)  A "Request and Report of Consultation" form reflects that on the same day, Baby and Avanzato requested an "urgent" referral for Plaintiff to see an orthopedic hand specialist, which was approved on July 16, and an appointment was scheduled for July 18. (*Id.* at 24.)

On July 9, Plaintiff's sutures were removed. (*Id.* at 32.)  On July 10, Plaintiff reported to sick call, where he stated that "he cut his hand, left hand [and] it is infected now." (*Id.*)[7]  His

---

[6] The Fishkill medical records are handwritten and some writing and signatures are impossible to comprehend.

[7] In the SAC, Plaintiff alleges that he signed up for sick call on July 9 because his hand was infected and he had not yet been seen by a doctor. (SAC at 11.)  The medical records reflect that he complained at the July 10 visit that his hand was infected. (*Id.* at 32.)  The records do not reflect a finding of infection on July 9 or July 10.

records note that he was informed by a non-defendant that he would see a specialist the next day and was told to keep his hands clean, to wash often and dry, and to talk to the doctor the next day. (*Id.*) A note by the same non-defendant from July 12 indicates that Plaintiff was "put on MD callout again" and had been approved for a "hand/orth appt but no scheduled appt. date." (*Id.*)

On July 17, Plaintiff returned to sick call, requesting eyeglasses and medicine for the pain in his left hand, and was prescribed Motrin. (*Id.* at 31.) The non-defendant provider noted that Plaintiff "has appt 7/18." (*Id.*) The next day, Plaintiff had his hand appointment, (*id.* at 24), where the doctor noted that Plaintiff "need[ed] emergent surgery" on his right hand, (*id.*). On July 19, Plaintiff was seen for medical clearance for his upcoming surgery at Westchester Medical Center ("WMC"). (*Id.* at 11, 31.)

On July 28, Plaintiff filed a grievance addressed to Superintendent Leroy Fields, notifying him of the alleged lack of medical care. (AC at 11; SAC at 18.)[8] Plaintiff had surgery to repair the tendon on July 30, 2019 at WMC. (SAC at 25, 33, 42.) The next day, Wolf-Friedman and Avanzato requested a follow-up visit with the surgeon, which was scheduled for August 15, 2019. (*Id.* at 25.) Defendant Akinyombo responded to Plaintiff's grievance to Superintendent Fields on August 1, 2019, stating that Plaintiff was scheduled for a tendon repair and to follow up with his provider as needed. (*Id.* at 19.)

Plaintiff alleges that the denial of proper medical treatment has resulted in limited mobility, decreased use and disfigurement of his right hand, prolonged pain, and emotional distress and suffering. (*Id.* at 13.)

**B. <u>Procedural History</u>**

---

[8] In the SAC, Plaintiff alleges he sent this grievance to Akinyombo. (SAC at 10.)

On December 21, 2020, Plaintiff filed a complaint against the State of New York, DOCCS, and Fishkill, alleging deliberate indifference to his medical needs that constituted cruel and unusual punishment in violation of the Eighth Amendment.  (IC at 3-5.)  On March 16, 2021, this Court dismissed the case against the State of New York, DOCCS, and Fishkill, and replaced them with five John Doe Defendants.  (ECF No. 9.)  On April 1, 2021, Plaintiff filed an Amended Complaint, alleging that Defendants Akinyombo, Avanzato, Baby, Wolf-Friedman, Sergeant J. Pallone and Correction Officer Pennenga treated him with deliberate indifference in violation of the Eighth Amendment.  (AC at 27-28.)

On July 1, 2021, Defendants Akinyombo, Baby, Pallone, Pennenga, and Wolf-Friedman filed a pre-motion letter in anticipation of their motion to dismiss.  (ECF No. 19.)  After missing scheduled pre-motion conferences on both July 29 and September 3, 2021, (*see* Minute Entry dated July 29, 2021; Minute Entry dated Sept. 3, 2021), the Court ordered Plaintiff to respond to Defendants' July 1 letter, provide the court with contact information, and explain his failure to appear at the September 3 conference, lest the Court dismiss his case without prejudice.  (ECF No. 25.)  Plaintiff responded, (ECF No. 26), and at the pre-motion conference on October 10, 2021, I granted Plaintiff leave to amend his Amended Complaint by November 19, 2021.  (*See* Minute Entry dated Oct. 20, 2021.)  Plaintiff filed his Second Amended Complaint against Defendants Akinyombo, Avanzato, Baby, and Wolf-Friedman on November 18, 2021.  (ECF No. 28.)  Defendants Akimyombo, Baby, and Wolf-Friedman filed the instant motion on December 9, 2021, (ECF No. 29), Plaintiff opposed, (P's Opp.), and Defendants replied, (ECF No. 32 ("Ds' Reply")).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where

a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough. And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (cleaned up), *cert. denied*, 212 L. Ed. 2d 764 (U.S. May 2, 2022) (No. 21-1314).

Plaintiff attaches a variety of exhibits to his AC and SAC, including his medical records from Putnam Hospital Center and Fishkill, and the grievances he allegedly filed.  (AC at 8-24; SAC at 18-42.)  I will consider these exhibits not only because they are attached to the complaints, but because they are integral to them, in that they form the factual basis for most of the allegations in the AC and SAC, and because Plaintiff relied on them in framing his allegations.  Neither party disputes their authenticity, accuracy or relevance.

**B.**   *Pro Se* **Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

**III.**   **DISCUSSION**

**A.**   **Personal Involvement**

Defendants argue that Plaintiff has failed to plead facts showing the personal involvement of Defendants Wolf-Friedman, Baby, and Akinyombo. (Ds' Mem. at 6-7.)[9] "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (cleaned up). While *Colon* laid out a special test for supervisory liability outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit has clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Simply put, there's no special rule of liability for supervisors." *Id.* While "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established against the supervisory official *directly*," *id.* (emphasis added).

Plaintiff has not pleaded enough facts to render it plausible that Defendant Akinyombo – the Deputy Superintendent of Health Services at Fishkill, (SAC at 8) – was personally involved

---

[9] Defendants, in their reply, argue that because Plaintiff in his opposition did not address Defendants' arguments (1) that general allegations of inadequate medical care by "all defendants" fail to set forth personal involvement of Baby and Akinyombo, and (2) that the allegations against Akinyombo are insufficient to state a deliberate indifference claim, the claims against Baby and Akinyombo should be dismissed as abandoned. (Ds' Reply at 1-2.) District courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); *see Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) (collecting cases). This rule is applied to *pro se* litigants. *See Cuthbert v. Town of E. Hampton*, No. 18-CV-4796, 2021 WL 66289, at *5 (E.D.N.Y. Jan. 6, 2021); *Lewis v. Graham*, No. 18-CV-451, 2020 WL 3038276, at *11 (N.D.N.Y. Feb. 3, 2020), *report and recommendation adopted*, 2020 WL 1283532 (N.D.N.Y. Mar. 18, 2020). In an excess of caution, however, I address the merits.

in the alleged constitutional violations.  While Plaintiff alleges that "all defendants" failed to provide adequate medical treatment, (*id.* at 9), that allegation is insufficient because it is conclusory.  *See Ruiz v. Westchester County*, No. 18-CV-7007, 2020 WL 4340788, at *4 (S.D.N.Y. July 28, 2020) (collecting cases); *see also Gonzalez v. Yepes*, No. 19-CV-267, 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) ("As a corollary of the personal involvement requirement, complaints that rely on 'group pleading' and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (cleaned up) (collecting cases).  Plaintiff provides no specifics as to anything Akinyombo did or did not do, or how he was involved in Plaintiff's treatment at all.

It is apparent that Akinyombo is being sued merely based on his supervisory position, which even before *Tangreti* would not suffice to show personal involvement for purposes of § 1983.  *See, e.g.*, *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2004) ("Where a defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.") (cleaned up).  The only factual allegation against Akinyombo is that he "caused cruel and unusual inhuman treatment of harm by ignoring, belittling[,] humiliating plaintiff [based on his] response from [Plaintiff's] formal grievance A[u]gust 1[,] 2019 [where he said] 'you have been scheduled for a tendon repair in the nearest future.'"  (SAC at 12 (quoting *id.* at 19).)  Merely receiving a grievance does not suffice to show personal involvement.  *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *14 (S.D.N.Y. Jan. 25, 2018).  That Akinyombo responded to Plaintiff's letter by noting that Plaintiff had been scheduled for a tendon repair "does not demonstrate that [Akinyombo] was personally involved in any constitutional violation (if anything, it demonstrates [Akinyombo's] responsiveness to

[Plaintiff's] medical needs and requests)." *Reid v. City of N.Y.*, No. 20-CV-644, 2021 WL 3477243, at *20 (S.D.N.Y. Aug. 6, 2021). Any allegation that Akinyombo, "by virtue of [his] response to the letter, became personally involved in failing to provide [adequate medical care] is conclusory and insufficient to establish that, through [his] own actions, [he] violated [Plaintiff's] constitutional rights," as there are also no facts showing Akinyombo made any actual medical decisions. *Id.* Further, there is nothing belittling or humiliating about Akinyombo's response, and in any event that response – dated after Plaintiff received the care he said he needed – could not have been the cause of any injury to Plaintiff.[10]

Plaintiff's allegations as to the personal involvement of Defendant Baby also fail. Putting aside conclusory generalities about "all defendants," (SAC at 9-10, 12-14), *see 5465 Route 212, LLC v. N.Y. State Dep't of Transp.*, No. 19-CV-1510, 2020 WL 6888052, at *9 (N.D.N.Y. Nov. 24, 2020) ("Because the personal involvement of a defendant is a prerequisite to an award of

---

[10] Plaintiff also alleges that the assault by the other inmate "occurred despite the dangers and threats being known to . . . Deputy Superintendent A. Akinyombo," (AC at 29), but this allegation is entirely conclusory, as he provides no facts showing that Akinyombo knew of the possibility of assault or other "dangers and threats" beforehand. *See Massey v. Michele*, No. 20-CV-7621, 2022 WL 1493269, at *7 (S.D.N.Y. May 11, 2022) (general and conclusory statements that defendants were aware of risk to inmate are insufficient to plausibly allege deliberate indifference to health and safety); *Tate v. City of N.Y.*, No. 16-CV-1894, 2017 WL 10186809, at *12 (E.D.N.Y. Sept. 29, 2017) ("plaintiff has not identified [defendant] as an officer whom he informed of the threats, or otherwise established [defendant's] personal involvement in the alleged constitutional violation"); *Harris v. LaValley*, No. 14-CV-436, 2016 WL 11478232, at *4 (N.D.N.Y. May 17, 2016) (conclusory allegation of knowledge, absent facts from which defendants' awareness could be reasonably inferred, "does not plausibly suggest that defendants became aware that plaintiff's health and safety was at risk at a time that would have permitted them to intervene and protect [plaintiff] from the injuries he sustained by a fellow inmate"), *report and recommendation adopted sub nom. Harris v. Brown*, 2016 WL 4919948 (N.D.N.Y. Sept. 15, 2016); *Stamile v. County of Nassau*, No. 10-CV-2632, 2014 WL 1236885, at *6 (E.D.N.Y. Mar. 25, 2014) ("Plaintiffs have not sufficiently alleged that . . . [defendant] was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.").

damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations"), Plaintiff alleges only that Baby was the nurse practitioner on duty when Plaintiff returned from Putnam Hospital Center, (SAC at 8), and the documentation attached to the SAC shows that she requested his first consultation with the hand specialist, (*id.* at 24).  These allegations fail to plausibly show that she was involved in or responsible for the delay in treatment of which Plaintiff complains.

Plaintiff alleges that Wolf-Friedman was the doctor "assigned" when he returned from the Putnam Hospital Center, (*id.* at 8), and that she "refused" or "fail[ed]" to remove his stitches in the prescribed time frame, (*id.* at 12).  The documentation he attaches shows that she signed the request for his post-operative follow-up.  (*Id.* at 25.)  The allegation that she refused to remove Plaintiff's stitches barely suffices to distinguish her case from Baby's – a refusal and a failure are two different things – but in an excess of caution I will not dismiss Wolf-Friedman based on lack of personal involvement.

For the reasons stated above, the Eighth Amendment claims against Defendants Akinyombo and Baby are dismissed for lack of personal involvement.

### B.    <u>Deliberate Indifference to Medical Needs</u>

Next I address whether Plaintiff has adequately stated a claim for deliberate indifference to his medical needs against Wolf-Friedman and – in an excess of caution because Plaintiff pleads at least some facts about her – Baby.

The Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Yet not every lapse in medical care is a constitutional wrong.  Rather, a prison official violates the Eighth

Amendment only when two requirements" – one objective and one subjective – "are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (cleaned up).

The objective element requires that "the alleged deprivation of adequate medical care. . . be sufficiently serious." *Id.* (cleaned up). Under this element of the test, one must ask (a) "whether the prisoner was actually deprived of adequate medical care" and (b) if so, "whether the inadequacy in medical care is sufficiently serious." *Id.* at 279-80. Only "deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (cleaned up). Because a "prison official's duty is only to provide reasonable care," *Salahuddin*, 467 F.3d at 279 (*citing Farmer*, 511 U.S. at 844-47), "prison officials are liable only if they fail to take reasonable measures in response to a medical condition," *Rutherford v. Correct Care Sols., LLC*, No. 18-CV-12049, 2020 WL 550701, at *5 (S.D.N.Y. Feb. 4, 2020) (cleaned up).

The subjective component requires a plaintiff to plausibly allege that the official acted with deliberate indifference to the inmate's health. *Salahuddin*, 467 F.3d at 280. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* "The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere." *Id.* at 281.

"[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). While deliberate indifference is not established merely because a provider concludes no medical treatment is necessary, *Jordan v. Fischer*, 773

F. Supp. 2d 255, 276-77 (N.D.N.Y. 2011), the personnel in question must actually evaluate the patient's condition and make a determination, *see Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *4 (S.D.N.Y. Sept. 30, 2017) (plaintiff who alleged he complained of chest pains and was sent back to his cell without examination or treatment before having a heart attack had pleaded deliberate indifference); *Gilliam v. Hamula*, No. 06-CV-6351, 2011 WL 6148943, at *16 (W.D.N.Y. Dec. 12, 2011) (alleged refusal to examine Plaintiff could support finding of deliberate indifference); *cf. Powell v. Cusimano*, 326 F. Supp. 2d 322, 338-39 (D. Conn. 2004) (plaintiff was not denied medical care because evidence clearly showed he was in fact examined by a nurse).

### 1.    The Objective Prong

The objective element "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702 (cleaned up).  "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (cleaned up).

Plaintiff's discharge documents from the Putnam Hospital Center advised that he should make a follow-up appointment within one to two days because of tendon involvement that needed to be repaired, (*id.* at 27), and that "[s]tiches placed in the tendon will not need to be removed . . . [and] [s]tiches or staples placed in the skin will be removed in 7 to 10 days," (*id.* at 37).  The documents also noted that "[b]est results occur when the tendon is repaired in 7 to 10 days." (*Id.*)  After going to sick call on June 28, 2019 and July 8, 2019, (*id.* at 29), Plaintiff's sutures were removed on July 9, twelve days after he got them at the hospital, (*id.* at 32.)  His

consultation with the specialist was requested on July 8, approved on July 16, and held on July 18.  (*Id.* at 24.)  Plaintiff ultimately received surgery to repair the tendon on July 30, (*id.* at 25, 33, 42), which was thirty-three days after his initial hospital visit.  Plaintiff alleges that the delays in medical treatment were due to Defendants' deliberate indifference and caused his injuries to worsen.  (*Id.* at 12-13.)

"[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'"  *Salahuddin*, 467 F.3d at 280 (alteration in original) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).  For a delay in treatment to be deemed sufficiently serious, "the actual medical consequences that flow from the alleged denial of care will be highly relevant."  *Reid*, 2021 WL 3477243, at *9 (cleaned up).  "In this Circuit, where delays in medical treatment have been found to be objectively serious, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness."  *Massey*, 2022 WL 1493269, at *6 (cleaned up).  "Courts within this Circuit generally limit finding deliberate indifference based on such delays in treatment to cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years."  *Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *14 (S.D.N.Y. Feb. 7, 2022) (cleaned up).

Here, while Plaintiff surely suffered serious injuries, there are no factual allegations plausibly showing show that they occurred because of the alleged delay in treatment, as opposed to the underlying assault.  The removal of the sutures two days beyond the recommended time

window is hardly a "prolonged" period of delay, *see, e.g.*, *Constant v. Park*, No. 16-CV-3985, 2019 WL 3287818, at *12 (S.D.N.Y. July 19, 2019) (two-month delay in removing stitches was not objectively serious deprivation where the plaintiff "does not explain how th[e] allegedly delayed treatment was 'needlessly prolonged' or 'caused extreme pain or exacerbated' his condition"), nor has Plaintiff shown that it led to extreme pain or an exacerbation of his condition, *see Williams v. City of N.Y. Dep't of Corr.*, No. 19-CV-9528, 2020 WL 3893929, at *5 (S.D.N.Y. July 10, 2020) (plaintiff's claim for delayed medical treatment was not sufficiently serious because he failed to allege that the delay exacerbated his condition to the point of extreme pain). At his June 28th sick call, according to his medical records, Plaintiff "state[d] he [wa]s not in pain but . . . [wa]s upset." (SAC at 29.) And at his July 8th sick call, one day before his sutures were removed, the medical notes indicate that the sutures on the left hand were coming loose but there was "no acute distress." (*Id.*) Plaintiff claimed on July 10, although the medical records do not confirm, that his left hand was infected, (*id.* at 32), but he provides no facts plausibly suggesting that any such infection was caused by the stitches being removed on the twelfth day after the injury rather than the tenth.

Nor is a month-long delay in receiving surgery a prolonged delay. Cases that have found such delays to be sufficiently serious involved periods of several months or even years. *See, e.g.*, *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir.1994) (more than two-year delay in removing broken pins from plaintiff's hip despite nearly seventy complaints of pain considered sufficiently serious); *Anderson v. Williams*, No. 15-CV-1364, 2016 WL 7217588, at *2 (D. Conn. Dec. 13, 2016) ("[T]he delay of several months in scheduling [Plaintiff's] follow-up treatments is a 'sufficiently serious' deprivation of his rights."); *Price v. Reilly*, 697 F. Supp. 2d 344, 362 (E.D.N.Y. 2010) ("[W]here there was a delay of at least nine months in arranging a kidney

transplant test for plaintiff despite plaintiff's repeated requests, . . . a rational jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs."). The delay here, during which period Plaintiff was receiving attention, does not rise to the necessary level. *See Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *7 (S.D.N.Y. Mar. 29, 2018) (delay in surgery from April 2 to April 29, 2016 not sufficiently serious for Eighth Amendment claim, where plaintiff was seen by several providers during that period and request to see outside doctor was facilitated in less than three weeks) (collecting cases). Nor did the delay plausibly cause extreme pain. Although, according to Plaintiff's medical records, he complained of a left-hand infection on July 10, (*id.* at 32), and was prescribed "med[ication] for left hand pain" on July 17, (*id.* at 31), this left-hand pain obviously could not have been caused by a delay in surgery on the right hand.

Finally, Plaintiff has not provided facts plausibly suggesting that the delay affected the outcome of the surgery. While ideally it would have occurred within ten days, as the "best results" occur within that period, Plaintiff provides no facts plausibly suggesting that the delay had any effect here. *Cf. Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (objective prong met where delay in surgery rendered injury inoperable). Nor is the "best result" constitutionally required. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (cleaned up); *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) ("[Plaintiff] is not entitled under the Eighth Amendment to the best treatment available; he is merely entitled to 'reasonable care.'").

Thus, the delay in the surgery and the delay in the removal of the sutures – while nothing of which to be proud, and lapses that I hope DOCCS will address through improved procedures – do not rise to the level of seriousness required to satisfy the objective prong.

### 2.      The Subjective Prong

Even if Plaintiff had met the objective prong, he fails to meet the subjective prong. Plaintiff fails to allege facts plausibly suggesting that any Defendant knew that he would be put in serious risk by delay in the removal of his sutures and surgery and consciously disregarded that risk.

Again putting aside his conclusory group allegations, Plaintiff alleges that Defendant Wolf-Friedman "fail[ed]" or "refused" to remove his sutures and schedule his surgery within seven to ten days.  (SAC at 12.)  But he presents no facts suggesting that that failure was deliberate, or that merely because she was on duty when he returned from the hospital, it was her responsibility to remove his sutures or schedule his surgery.  He further alleges that Wolf-Friedman prevented him from following up with a hand specialist within the recommended one-to-two-day period, (*id.* at 9-10), but provides no facts about what she did or should have done that might render that conclusion plausible.  And Plaintiff alleges that all Defendants were aware of the risk of not timely addressing his tendon repair or treating his injuries, (*id.* at 12), but provides no facts in support.  In short, his allegations are conclusory, with no facts suggesting that Wolf-Friedman was in charge of scheduling or performing those tasks, or even that she interacted with him regarding them and was aware of the risk of not timely addressing his injuries.

In his opposition, Plaintiff states that both Wolf-Friedman and Baby were "assigned patient when [he] returned from [P]utnam County Hospital and w[ere] aware that plaintiff had

follow up care directed from Putnam County [H]ospital," (P's Opp. at 3), and his medical records reveal that on July 8th, non-defendant provider Thomas was "made aware of IM's plan of care as outlined by PHC ER's discharge paperwork," (SAC at 29), which included the recommended time frames for removing the sutures and having surgery, (*id.* at 37.)  But nowhere are there facts suggesting that either Wolf-Friedman or Baby was the individual responsible for scheduling or providing his follow-up care.[11]  It is difficult to make out from the records which providers saw Plaintiff on which days, who was made aware of the recommended next steps in Plaintiff's care, and who was in charge of seeing that those steps were taken.

But even assuming that Defendants knew about the time frames and were responsible for arranging for the follow-up, there are no facts plausibly suggesting that the short delay here was deliberate.  On July 8th itself, Baby referred Plaintiff to an orthopedic hand specialist, (*id.* at 24), and the next day Plaintiff's sutures were removed, (*id.* at 32.)  There is simply no indication that either Wolf-Friedman or Baby delayed Plaintiff's treatment as a form of punishment or otherwise believed that their conduct was putting Plaintiff at risk but persisted anyway.  Further, the records reflect that a computer glitch and a short period to obtain the necessary approval contributed to the delay.  Courts have "refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials," including "logistical difficulties involved in scheduling outpatient appointments."  *Madera v.*

---

[11] On Monday, July 8, 2019, Baby requested authorization for Plaintiff to see a specialist, (SAC at 24) – perhaps following up on the request of the provider who saw Plaintiff on Friday, June 28, 2019 that someone take care of that task the following week, (*id.* at 39) – but there is no indication that she was responsible for making the request in the first instance, or that she deliberately failed to do so, knowing it put Plaintiff at serious risk.  On July 31, 2019, Wolf-Friedman requested authorization for Plaintiff's follow-up appointment with the surgeon, (*id.* at 25), but there is no indication that she was responsible for removing the sutures or scheduling the surgery, or that she deliberately failed to do so, knowing it put Plaintiff at serious risk.

*Ezekwe*, No. 10-CV-4459, 2013 WL 6231799, at \*12 (E.D.N.Y. Dec. 2, 2013).  The delay here, while unfortunate, seems to have resulted from administrative inefficiency or incompetence.  At most, the failure to remove Plaintiff's sutures and arrange for surgery more quickly might – if there were harm – amount to medical malpractice, but "[h]arm to a prisoner caused by accident, negligence or medical malpractice do not alone constitute the necessary deliberate indifference." *Hogan v. Russ*, 890 F. Supp. 146, 149 (N.D.N.Y. 1995).  Similarly, Plaintiff's allegation that all Defendants "deviated from accepted standards of medical and nursing care from June 26, 2019 . . . until present day," (SAC at 13), is at most an allegation of negligence or malpractice – and a conclusory one at that – which does not suffice to plausibly show deliberate indifference.

Accordingly, Plaintiff's Eighth Amendment claim against Defendants Wolf-Friedman and Baby for deliberate indifference to medical needs is dismissed.  The Court sympathizes with Plaintiff's situation, but his medical care does not rise to the level of a constitutional violation.

## C.   Unserved Defendant

Although the Court ordered service on Avanzato, (ECF No. 13), it does not appear that he was ever served, (*see* Ds' Mem. at 1 n.1), and Plaintiff never requested an extension of time to do so, despite being advised that that was his responsibility to make such a request if service was not completed within the ninety days contemplated by Federal Rule of Civil Procedure 4(m), (ECF No. 13).  In any event, the allegations against Avanzato in both the AC and the SAC are wholly conclusory.  Aside from the fact that Avanzato approved the consultation with the surgeon and the follow-up visit, (SAC at 24-25), Plaintiff provides no specifics about anything Avanzato did or did not do.  The case against him is even thinner than that against Wolf-Friedman, because it is not alleged that Avanzato even saw Plaintiff.

In his opposition, Plaintiff removed Defendant Avanzato from the case caption and did not address the fact that Avanzato has not been served or otherwise advance any factual allegations relating to Avanzato's involvement.  (P's Opp. at 1-3.)  Thus, even if Plaintiff could show good cause for the failure to serve Avanzato, *see* Fed. R. Civ. P. 4(m), "the Court has already found that Plaintiff cannot assert a viable claim based on the alleged deprivation of [medical care], and that finding would apply equally to a claim against [Avanzato].  Under these circumstances, it is appropriate for the Court to dismiss Plaintiff's claims as to [Avanzato] *sua sponte*."  *Brown v. Womack*, No. 16-CV-31, 2019 WL 4689166, at *7 (W.D.N.Y. Sept. 26, 2019) (collecting cases); *see McLennon v. New York City*, No. 13-CV-128, 2015 WL 1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) ("As the court's rulings herein would apply equally to the non-moving defendants in this case, the court dismisses plaintiffs' . . . claims for failure to state a claim as to the non-moving and unserved defendants *sua sponte*."); *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 463 n.2 (S.D.N.Y. 2014) ("[B]ecause Plaintiffs' claims against [the unserved] defendants suffer from the same deficiencies as against [the served defendant], the Court will treat the instant motion as if it were brought on behalf of all defendants."), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015).

Accordingly, the claim against Avanzato is dismissed.

### D.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v.*

*City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint twice, (*see* ECF No. 12; ECF No. 28), once after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (ECF No. 19), and the discussion at the October 20, 2021 pre-motion conference, (*see* Minute Entry dated Oct. 20, 2021).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up) (emphasis added); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine*

*SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 29), and close the case.

**SO ORDERED.**

Dated: July 8, 2022
       White Plains, New York

_____
       CATHY SEIBEL, U.S.D.J.